[Cite as *State v. Romy*, 2021-Ohio-501.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2020 CA 00066 |
| REBECCA LYNN ROMY | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                                          Pleas, Case No.  2019 CR 2234B


JUDGMENT:                                    Affirmed


DATE OF JUDGMENT ENTRY:         February 24, 2021


APPEARANCES:

For Plaintiff-Appellee                       For Defendant-Appellant

JOHN D. FERRERO                          KRISTIN L. ZALENSKI
PROSECUTING ATTORNEY            116 Cleveland Avenue, NW
RONALD MARK CALDWELL           Suite 808
ASSISTANT PROSECUTOR            Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}** Appellant, Rebecca Romy, appeals the judgment entered by the Stark County Court of Common Pleas convicting her of violating R.C. 2907.05(B), Gross Sexual Imposition, and R.C. 2919.22(B)(2) Endangering Children. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**STATEMENT OF THE FACTS AND CASE**

**{¶2}** On November 19, 2019, the Stark County Grand Jury indicted Appellant with one count of Gross Sexual Imposition in violation of R.C. 2907.05(B) and Endangering Children in violation of R.C. 2919.22(B)(2).

**{¶3}** On December 6, 2019, Appellant entered a plea of not guilty to both counts of the indictment.

**{¶4}** On January 15, 2020, Appellant filed a Motion for Appropriation of Funds for Expert Assistance.

**{¶5}** On February 3, 2020, Appellant filed a *Daubert* Motion and Motion in Limine to exclude testimony by Appellee's expert.

**{¶6}** On February 12, 2020, the trial court denied Appellant's Motion for Appropriation of Funds for Expert Assistance, Appellant's *Daubert* Motion, and Appellant's Motion in Limine to exclude the testimony of Appellee's expert.

**{¶7}** On February 19, 2020, the matter proceeded to a jury trial.

**{¶8}** At trial, the State first called MB to testify. On direct examination, MB testified that CS had lived with her since April of 2018, and that she was currently CS's legal guardian. MB continued that, in September of 2018, MB, when CS was ten years old, had noticed CS had spread peanut butter all over his belly and down in his boxers.

CS was allowing the dogs to lick the peanut butter off. After giving CS a bath, MB's adult daughter asked CS where he learned to do that. CS explained that his mother, Appellant, and her boyfriend, Chad Newman, had done that to him. MB then contacted Child Protective Services and brought CS in for an interview. MB then testified she took CS to Carrie Schnirring for a psychological assessment.

{¶9} Next, the State called CS to testify. On direct examination, CS testified that Appellant held CS's legs down while Newman put peanut butter on his rectum and penis, then had the dog lick the peanut butter off. CS identified Appellant as having held down his legs.

{¶10} On cross examination, CS testified that he was watching tv on the couch just prior to the incident. CS also testified that Newman, as well as the dog, licked the peanut butter, and that Newman had done this to another neighborhood boy.

{¶11} After CS testified, trial counsel for Appellant moved for a mistrial claiming the trial court judge admonished him in front of the jury, thereby tainting the jury and putting Appellant in a position where she would not receive a fair trial. The trial court denied the motion.

{¶12} The State then called Detective Mongold to testify. Detective Mongold testified that he investigated the abuse of CS with Newman as the primary suspect and Appellant as a witness. As the investigation developed, Mongold stated information came out that Appellant was an active participant in the abuse, and not just a witness. Mongold further testified he had trouble locating the residence where the incident took place, but eventually identified it.

**{¶13}** Next, the State called Kelly Stoffer to testify. Stoffer testified that during her in-home visit with MB and CS, everything seemed appropriate. Stoffer interviewed Appellant, at which point Appellant said she did not remember the incident, but that she believed Newman to be capable of such things.

**{¶14}** The State also called Kathleen Nduati, a pediatric nurse practitioner. She testified that from the information CS gave her, she diagnosed child sex abuse.

**{¶15}** The State then called Carrie Schnirring. Schnirring testified that she conducted a psychological evaluation on CS and diagnosed CS with having adjustment disorder with mixed disturbance of emotion and conduct.

**{¶16}** The State then rested its case-in-chief.

**{¶17}** Before Appellant's attorney presented Appellant's case-in-chief, it came to the court's attention that jurors had been discussing the case. Juror No. 65 indicated his dislike for defense counsel and was subsequently dismissed. Juror No. 19 stated that the trial would last a little longer as the defense would have to present their case. Juror No. 11 said the defense has to prove its case and that takes time.

**{¶18}** Appellant's attorney called KS to testify. KS testified that the residence believed to be the house where the incident took place had no furniture or electricity.

**{¶19}** Appellant then took the witness stand to testify. Appellant testified that CS lived with his grandfather for most of his life. She testified that the only furnishing in the residence she shared with Newman were a mattress and box springs. She continued that the only utility they had was water, no electricity. She denied ever witnessing or participating in any abuse of CS.

{¶20} Appellant's trial counsel then rested the case and moved that based upon all the evidence, the State did not prove its case by proof beyond a reasonable doubt.

{¶21} The trial court overruled the motion.

{¶22} On February 21, 2020, the jury returned a verdict of guilty on both counts of the indictment.

{¶23} On February 24, 2020, the trial court sentenced Appellant to five years of incarceration.

**ASSIGNMENT OF ERROR**

{¶24} On March 24, 2020, Appellant filed a notice of appeal. He herein raises the following nine Assignments of Error:

{¶25} "I. THE COURT COMMITTED REVERSIBLE ERROR IN EXCLUDING TESTIMONY REGARDING AN ADDITIONAL DISCLOSURE BY THE ALLEGED VICTIM INVOLVING A SECOND VICTIM NEARLY CONTEMPORANEOUS WITH THE CHARGED CRIMINAL CONDUCT.

{¶26} "II. THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF MS. SCHNIRRING AS IT SERVED AS IMPROPER VOUCHING FOR THE CREDIBILITY OF C.S. AND THE VERACITY OF HIS STATEMENTS WHICH IMPERMISSIBLY USURPED THE ROLE OF THE JURY.

{¶27} "III. TRIAL COURT ERRED IN DENYING APPELLANT'S PRAYER FOR FUNDS FOR AN EXPERT WITNESS, DENYING APPELLANT OF HER RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶28}** "IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO SUBJECT MS. SCHNIRRING'S METHODOLOGY TO A DAUBERT HEARING.

**{¶29}** "V. APPELLANT [SIC] COUNSEL ENGAGED IN INEFFECTIVE ASSISTANCE AFTER FAILING TO REQUEST A CURATIVE INSTRUCTION AFTER THREE JURORS DISCUSSED THE NEED FOR THE DEFENSE TO 'PROVE ITS CASE.'

**{¶30}** "VI. THE TRIAL JUDGE'S REPEATED COMMENTS ON TRIAL COUNSEL'S PERFORMANCE UNDULY INFLUENCED THE JURY AND INDICATED A LACK OF IMPARTIALITY.

**{¶31}** "VII. APPELLANT COUNSEL ENGAGED IN INEFFECTIVE ASSISTANCE IN DECLINING TO WITHDRAW DESPITE A PERCEIVED, INTRACTABLE DISPUTE WITH THE COURT.

**{¶32}** "VIII. THE TRIAL JUDGE VIOLATED APPELLANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS AGAINST CRUEL AND UNUSUAL PUNISHMENT IN IMPOSING AN EXCESSIVE SENTENCE OF THE STATUTORY MAXIMUM OF 5 YEARS.

**{¶33}** "IX. THE JURY FUNDAMENTALLY LOST ITS WAY IN ENTERING FINDINGS OF GUILT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

**{¶34}** In Appellant's first Assignment of Error, Appellant argues the trial court erred in excluding evidence that CS had seen Newman go to a neighboring house and engage in the same abusive conduct with a four-year-old boy. We disagree.

**{¶35}** Appellant cites no statutory, case law, rules of evidence, or learned treatise from this or any other jurisdiction to support her argument. Accordingly, Appellant's brief does not comply with App.R. 16(A)(7), which provides,

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

**{¶36}** "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, at ¶14, quoting *State v. Carman*, 8th Dist. Cuyahoga No. 90512, 2008-Ohio-4368, at ¶31. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 9th Dist. Summit No. 24184, 2009-Ohio-1211, at ¶16, quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.*, 4th Gallia No. 07CA4, 2008-Ohio-2194, at ¶12. *See, also*, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright*, 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709, at ¶16; *Tally v. Patrick,* 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, at ¶21-22; *Jarvis v. Stone*, 9th Dist. Summit No. 23904, 2008-Ohio-3313, at ¶23; *State v. Paulsen*, 4th Hocking Nos. 09CA15, 2010-Ohio-806, ¶6; *State v. Norman*, 5th Guernsey

No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. Muskingum No. CT20060005, 2007 WL 1122731, ¶141.

**{¶37}** An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393 (1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555 (1933).

**{¶38}** In the interest of justice we will proceed to consider this assignment of error.

**{¶39}** A criminal defendant has a right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). However, this right is not absolute and applies only to evidence admissible under the rules of evidence. *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837. "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake City*, 58 Ohio St.3d 269, 271 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion *Id*. The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶40}** Appellant alleges in her brief that the trial court abused its discretion by not allowing defense counsel to question CS in regard to CS reporting that Newman abused a second child in a similar manner, but Appellant did not participate in this alleged incident. The trial court ruled that the alleged incident between Newman and the second boy was not relevant to the issues in this case.

**{¶41}** Ohio Evid.R. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶42}** Ohio Evid.R. 616 states:

In addition to other methods, a witness may be impeached by any of the following methods:

\*\*\*

**(C) Specific Contradiction.** Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony…

**{¶43}** As a general rule, all relevant evidence is admissible. Ohio Evid.R. 402. Our task is to look at the totality of the circumstances in the case *sub judice* and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman*, 5th Dist. Stark No. 1999CA00027, 2000 WL 222190.

**{¶44}** An exception to the general rule is that relevant evidence is inadmissible if its probative value is "substantially outweighed by the danger of unfair prejudice, of confusion of the issue, or of misleading the jury." Ohio Evid.R. 403(A).

{¶45} CS reported to Mongold that CS saw Newman go to a neighboring house and engage in the same peanut-butter conduct with a four-year-old boy. The police were unable to verify the identity of the four-year-old boy. Appellant sought to question Mongold about not being able to locate the boy.

{¶46} Upon review of the entire record, the trial court did not abuse its discretion when finding that CS's reporting the alleged abuse of a second boy, which Appellant is not alleged to know of or participate in, is not relevant to Appellant's case. Appellant claims that the questioning was a challenge to C.S.'s credibility. Under Ohio Evid.R. 616(C), Appellant may show facts contradicting witness testimony; however, the fact that police could not locate the four-year-old boy does not contradict the testimony, and the trial court did not abuse its discretion precluding Appellant from questioning CS or Mongold about the alleged abuse of the neighborhood boy.

{¶47} Appellant's First Assignment of Error is Overruled.

## II.

{¶48} In Appellant's Second Assignment of Error, Appellant argues the trial court erred in allowing Carrie Schnirring to testify that CS's age and cognitive delays would make it unlikely he could retell a story of abuse consistently had the story been fabricated. We disagree.

{¶49} Again, a criminal defendant has a right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). However, this right is not absolute and applies only to evidence admissible under the rules of evidence. *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837. "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any

particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake City*, 58 Ohio St.3d 269, 271 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶50}** An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, there is a difference "between expert testimony that a child witness is telling the truth and evidence which bolsters a child credibility." *State v. Stowers*, 81 Ohio St.3d 260, 262-263, 690 N.E.2d 882 (1998). Thus, an expert can testify that a child's behavior is consistent with the behavior of other children who have been sexually assaulted." *Id.*

**{¶51}** The evidentiary admissions in the case *sub judice* are distinguishable from *Boston*. First, this was not a situation where a witness attests to the credibility of a child-victim who has been found incompetent to testify. In addition, "*Boston* does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *See Stowers* at 263.

**{¶52}** Schnirring did not testify as to the veracity of CS's statements. Instead, her testimony was offered to show that CS was a victim of sex abuse because his behavior was common in children who have been abused, and that someone with developmental delays and cognitive disabilities would have a hard time maintaining consistency in a fabricated story.

**{¶53}** We find Schnirring's testimony not to be within the purview of *Boston*. The trial court did not abuse its discretion by admitting Schnirring's testimony.

**{¶54}** Appellant's Second Assignment of Error is overruled.

**III.**

**{¶55}** In Appellant's Third Assignment of Error, Appellant argues the trial court should have granted Appellant funds for an expert witness.

**{¶56}** The Ohio Supreme Court has held, "it is appropriate to consider three factors in determining whether the provision of an expert witness is required: 1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, 2) the burden on the government's interest if the service is provided, and 3) the probable value the additional service and the risk of error in the proceedings if the assistance is not provided." *State v. Mason*, 82 Ohio St.3d 144, 149 (1998), citing *Ake v. Oklahoma*, 470 U.S. 68 (1985).

**{¶57}** This Court has previously held, "[i]n absence of a particularized showing of need, due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution does not require the provision of an expert witness." *In re B.L.*, 5th Dist. Licking No. 09-CA-54, 2009-Ohio-6341. A defendant must provide a trial court with facts sufficient to establish a particularized need for expert assistance and must demonstrate more than a mere possibility of assistance to receive an expert witness at the state's expense. *State v. Nichols*, 5th Dist. Fairfield No. 09-CA-50, 2010-Ohio-2242. Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate. *Id*.

**{¶58}** On February 3, 2020, the trial court held a hearing on Appellant's motion for funds for an expert clinical psychologist. Appellant requested funds to retain an expert in the area of psychology to aid in the defense of Appellant, and who may or may not refute Schnirring's assertions or methodology, as Appellant's counsel offered in the hearing.

**{¶59}** The State claimed Appellant failed to demonstrate a particularized need for the expert.

**{¶60}** The trial court, via Judgment Entry of February 12, 2020, denied the motion stating, "there is no need to require the minor child go relive this traumatic experience a third time through another type of forensic interview." The trial court made clear that when the minor child testified, opposing counsel would have the opportunity to cross examine, and that "[t]he jury will be the proper authority to discern the minor child's propensity to tell the truth, not a psychologist."

**{¶61}** We find the trial court did not abuse its discretion in denying the motion as Appellant demonstrated no particularized need for such an expert. Appellant could not show what testimony was anticipated, only that the witness may or may not agree with Schnirring. This is insufficient to establish the trial court abused its discretion.

**{¶62}** Appellant's Third Assignment of Error is overruled.

**IV.**

**{¶63}** Appellant's Fourth Assignment of Error claims the trial court erred in denying Appellant a *Daubert* hearing relative to Schnirring's testimony as a psychologist who treats children who are victims of abuse; however, the law and facts argued in the body of the Assignment of Error argues that the expert testimony should not have been

admitted by the trial court. We will address the argument raised in the body of the argument.

**{¶64}** In Appellant's Fourth Assignment of Error, Appellant argues the trial court erred allowing Schnirring to testify as an expert in clinical psychology with a focus on trauma. We disagree.

**{¶65}** Pursuant to Ohio Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert, and that determination will be overturned only for an abuse of discretion. *State v. Hartman*, 93 Ohio St.3d 274, 285, 754 N.E.2d 1150; *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444, as quoted in *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶46.

**{¶66}** Ohio Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A)    The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B)    The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C)    The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the results of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1)      The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2)      The design of the procedure, test, or experiment reliably implements the theory;

(3)      The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶67}** In *Thomas*, the Supreme Court of Ohio described the analysis for a determination of whether a witness may serve as an expert:

Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman*, 93 Ohio St.3d at 285, 754 N.E.2d 1150; *State v. Baston*, 85 Ohio St.3d 418, 423, 709 N.E.2d 128.

*Thomas* at ¶46.

**{¶68}** Schnirring was offered as an expert based on having over fifteen years of experience in the field of clinical psychology with a focus on trauma, a Master's degree in clinical psychology, and a Bachelor's degree in psychology in criminal justice. Appellant's counsel did not object to the trial court certifying Schnirring as an expert in the area of clinical psychology with a focus on trauma.

**{¶69}** Appellant argues that because the court ruled against Appellant's request for a *Daubert* hearing in a Judgment Entry dated, February 12, 2020, "the court does not

find her testimony to be the type of scientific testimony based on scientifically valid reasoning which would trigger a *Daubert* examination," then the trial court certifying her as an expert are irreconcilable. However, the trial court's ultimate finding in the February 12, 2020, judgment entry, stated, "this Court finds, as have other courts in Stark County, that Ms. Schnirring's expertise has met the requirements of *Daubert*. Her methods have been used in evaluating the alleged child victim in this case and have been reliably tested for over decades and have gained general acceptance among mental health professionals."

**{¶70}** Schnirring provided sufficient evidence to demonstrate knowledge and experience in the field sufficient to assist the finder of fact in its determination. We hold that the trial court did not abuse its discretion in finding Schnirring was qualified to serve as an expert.

**{¶71}** Appellant's Fourth Assignment of Error is overruled.

## V., VII.

**{¶72}** In Appellant's Fifth and Seventh Assignments of Error, Appellant argues trial counsel was ineffective as he failed to request a curative instruction when a juror remarked the defense had to prove its case now that the State rested and declined to withdraw as counsel. We disagree.

### a. Standard of Review

**{¶73}** Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must

determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶74}** Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶75}** "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

### b. Failure to request curative jury instruction

**{¶76}** After the State had rested its case, it came to the trial court's attention that jurors had been engaging in conversations about how much longer the case would last.

One juror commented that, after the State rested, the defense attorney has to prove its case, and that it would take some time.

**{¶77}** At the close of evidence the trial court instructed the jury, "[i]f you find the State proved beyond a reasonable doubt all the essential elements of gross sexual imposition, your verdict must be guilty." Tr. III at 137. As a jury instruction was given appropriately placing the burden of proof on the State, counsel not asking for further limiting instructions to reiterate the burden of proof does not fall below an objective standard of reasonable representation.

### c. Failure to withdraw as counsel

**{¶78}** OH ST RPC Rule 1.16 states:

(a) Subject to divisions (c), (d), and (e) of this rule, a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if any of the following applies:

(1) the representation will result in violation of the Ohio Rules of Professional Conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client;

(3) the lawyer is discharged.

**{¶79}** In Appellant's Seventh Assignment of Error, Appellant does not allege Appellant's trial attorney violated OH ST RPC 1.16(a), but that Appellant's trial counsel should have withdrawn from representation because of perceived animosity on behalf of the trial court toward Appellant's trial counsel. Before the trial started, Appellant's trial

counsel asks the trial court if it harbors any animosity towards counsel. The trial court states, "I have no animosity for you. I think you're a very thorough lawyer."

**{¶80}** As Appellant's trial counsel did not meet the criteria set forth under OH ST RPC Rule 1.16(a), he was not required to withdraw as counsel. Therefore, the decision not to withdraw representation would be within the counsel's wide range of trial tactics and strategies and not ineffective assistance of counsel. Therefore, Appellant's argument is unpersuasive and does not show counsel's performance fell below an objective standard of reasonable representation.

**{¶81}** Appellant's Fifth and Seventh Assignments of Error are overruled.

**VI.**

**{¶82}** In Appellant's Sixth Assignment of Error, Appellant argues the trial judge's repeated comments on trial counsel's performance unduly influenced the jury and indicated a lack of impartiality. We disagree.

**{¶83}** During a jury trial, the comments and manner of the trial court may have a strong impact on the jury. *State v. James*, 5th Dist. Stark No. 2016CA00144, 2017-Ohio-7861, ¶34. If the trial court's comments rise to the level of prejudicing the jury, the defendant is denied a fair trial. *Id.* The conduct of the trial court may affect the impartiality of the jury. *Id.* The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a criminal defendant should be tried before a panel of fair and impartial jurors.

**{¶84}** R.C. 2945.03 describes the trial court's control of a trial, "[t]he judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to

expeditious and effective ascertainment of the truth regarding the matters in issue." Ohio Evid.R. 611(A) provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

**{¶85}** In exercising the duty to control a criminal trial, the judge is to remain impartial and refrain from making comments which may influence a jury. *State v. Boyd*, 63 Ohio App.3d 790, 580 N.E.2d 443 (8th Dist. 1989). "[T]he judge must be cognizant of the effect of his comments upon the jury[.]" *State v. Wade*, 53 Ohio St.2d 182, 187, 373 N.E.2d 1244 (1978), vacated and remanded on other grounds. "[T]he Court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113, 256 N.E.2d 613 (1970), at paragraph three of the syllabus.

**{¶86}** In determining whether a trial judge's remarks were prejudicial, the burden of proof is placed upon the defendant to demonstrate prejudice. *State v. Petrone*, 5th Dist. Stark No. 2011CA00067, 2012-Ohio-911, ¶40, appeal not allowed, 132 Ohio St.3d 1463, 2012-Ohio-3054, 969 N.E.2d 1231, citing *Wade*, *supra*, 53 Ohio St.2d at 188. It is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for. *Id*. The remarks must be considered in light of the circumstances under which they are made, consideration must be given to their

possible effect on the jury, and consideration must be given to their possible impairment of the effectiveness of counsel. *Id.*

**{¶87}** An appellate court reviewing a trial court's comments must determine whether the trial court abused its discretion. *State v. Davis*, 79 Ohio App.3d 450, 454, 607 N.E.2d 543 (4th Dist. 1992). However, a failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, for, absent an objection, the trial court is denied an opportunity to give corrective instructions as to the error. *State v. Williams* (1974), 39 Ohio St.2d 20, 313 N.E.2d 859; *State v. Childs* (1968), 14 Ohio St.2d 56, 236 N.E.2d 545; *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 233 N.E.2d 137. *See, also*, *United States v. Gaines* (C.A.3, 1971), 450 F.2d 186, certiorari denied, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801; *United States v. Bessesen* (C.A.8, 1970) 433 F.2d 861, certiorari denied, 401 U.S. 1009, 91 S.Ct. 1254, 28 L.Ed.2d 545. To constitute plain error, it must appear from the record that an error occurred and that except for that error the outcome of the trial would have been different. *Hamilton v. Clemans*, 121 Ohio App.3d 337, 339, 700 N.E.2d 33 (12th Dist. 1997), citing *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

**{¶88}** The following interactions pointed out by Appellant occurred either at side bar outside the hearing of the jury, or after the jury had been excused.

**{¶89}** During opening statements, the trial judge told Appellant's counsel, "[y]ou're playing a game, and I'm not putting up with this at trial." Tr. I.II at 19-20. This interaction took place at side bar, outside the hearing of the jury. The judge then had the improper argument stricken in front of the jury. Appellant's counsel did not object to this ruling.

**{¶90}** The next interaction Appellant claimed prejudiced the jury occurred when the State objected during Appellant counsel's opening argument stating again he was using closing arguments. After discussing the appropriateness of the statements at side bar, out of the hearing of the jury, the judge sustained the objection. Appellant's counsel did not object to the court's comments.

**{¶91}** During cross-examination of the first witness, the State made a series of objections based on relevance. The trial court judge sustained the objections ruling the questions were irrelevant and asking Appellant's counsel to move on. Any discussion of the rulings took place during a side bar, outside the hearing of the jury. Appellant's counsel did not bring an objection on the trial court prejudicing the jury.

**{¶92}** At a side bar, out of the hearing of the jury, the trial court judge asked Appellant's counsel to lower his voice, and mentioned it was the sixth time that day. The trial court judge then told Appellant's counsel that we are done with the side bar and to go sit down. He then ended the side bar. No objection was raised by Appellant's counsel.

**{¶93}** After the jury had been excused, the trial court judge asked Appellant's counsel to calm down as, "the Court of Appeals can't see you're getting very challenging with me and being a little bit of a bully, and I don't want to see that in this court." Tr. II at 247. After Appellant's counsel continued to argue that he was not being allowed to proffer a reason for the record, the trial judge responded, "I did allow you to proffer it. You just want to keep going and antagonize me." *Id.*

**{¶94}** We do not find these instances could have been misunderstood by the jury to prejudice Appellant's right to a fair trial as the jury never heard any of these interactions.

**{¶95}** Appellant set forth further interactions which did occur within the presence of the jury.

**{¶96}** During opening arguments, Appellant's counsel referenced Newman as an unindicted codefendant. The trial judge interjected stating, "[t]hat is not pertinent to this case. And we will order that stricken." Tr. I.II at 10. Appellant's counsel did not object to this ruling.

**{¶97}** Next, the judge interrupted Appellant's counsel stating, "[y]ou are getting into a closing argument." Tr. I.II at 21. The court then asked Appellant's counsel to stick to opening statements. Appellant's counsel did not object to this ruling.

**{¶98}** During re-cross examination of Nduati, the trial court judge sustained an objection that the witness has already answered Appellant counsel's questions. Appellant's counsel then argued the point that he could ask them again. The trial court judge then stated, "believe it or not, I got elected judge and I get to make the decisions." Tr. II at 176. Appellant counsel did not object to the judge's comments.

**{¶99}** In addition, the trial court judge on numerous occasions told trial counsel "we get it" or asked trial counsel to "simplify" a question. Appellant does not show any objections to these comments by the trial court judge.

**{¶100}** An improper conversation occurred between an alternate juror and a juror, where a juror expressed dislike for Appellant's trial counsel. The juror also indicated it would not affect his ability to judge the case fairly. Appellant's trial counsel wished to question the juror on what he disliked about defense counsel, the trial court judge decided to hold off on the questioning, and to revisit at a later time. The trial court judge removed

Juror 65. When asked for any objections on removing the juror, or the process, neither attorney objected.

{¶101} Our review of the trial court's statements reveals that they are limited to keeping witnesses and counsel on track with relevant issues in the case, preventing the mischaracterization of witness's testimony, and asking for counsel to clarify complex questions. Taken in context, we are not persuaded that the outcome of the trial clearly would have gone the other way but for the alleged error. Under these circumstances we find that no plain error was committed.

{¶102} Appellant's Sixth Assignment of Error is overruled.

**VIII.**

{¶103} In Appellant's Eighth Assignment of Error, Appellant argues the trial court violated Appellant's rights against cruel and unusual punishment by sentencing Appellant to the maximum sentence allowable by statute. We disagree.

{¶104} The Eighth Amendment to the United States Constitution prohibits "[e]xcessive" sanctions. It provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

{¶105} In *State v. Pore*, 5th Dist. Stark No. 2013CA00119, 2014-Ohio-790, ¶13, we stated:

> The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids extreme sentences that are grossly disproportionate to the crime. *State v. Weitbrecht*, 86 Ohio St.3d 368, 373, 715 N.E.2d 167 (1999), quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680 (1991), (Kennedy, J., concurring in part and in

judgment). In *Solem v. Helm*, 463 U.S. 277, 290-292, 103 S.Ct. 3001, 3010-3011, 77 L.E.2d 637, 649-50 (1983), the United States Supreme Court set forth a three-part test for determining whether a sentence is disproportionate to the crime: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. A sentence does not violate the constitutional prohibition against cruel and unusual punishment unless the sentence is so grossly disproportionate to the offense as to shock the sense of justice in the community. *State v. Chaffin*, 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46 (1972).

{¶106} Appellant argues the maximum sentence allowed by law, sixty months, for the offense of gross sexual imposition constitutes cruel and unusual punishment. Appellant does not challenge sentencing is out of line with other sentences from this or other jurisdictions, nor does she argue she was not sentenced within a range permitted by statute. Appellant's challenge is that the sentencing court made a series of inflammatory comments during sentencing and such comments were not appropriately applying the R.C. 2929.12 sentencing factors.

{¶107} In the instant case, on the record at the sentencing hearing, the trial court noted it considered the purposes and principles of sentencing contained in R.C. 2929.11 through R.C. 2929.17 including the seriousness of the offense and recidivism factors. The prison term of sixty months is within the statutory range for the offense and is in accordance with law. R.C. 2907.05(C)(3); R.C. 2929.14. Any inflammatory language used

at sentencing was the trial judge explaining its reasons for imposing the maximum sentence. We find the sentence of the trial court is supported by the record and does not violate the constitutional prohibition against cruel and unusual punishment.

{¶108} Appellant's Eighth Assignment of Error is overruled.

**IX.**

{¶109} In Appellant's Ninth Assignment of Error, Appellant argues the jury's guilty verdict was against the manifest weight of the evidence. We disagree.

{¶110} When reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721 (1983).

{¶111} The jury convicted Appellant on one count of Gross Sexual Imposition in violation of R.C. 2907.05(B) and Endangering Children in violation of R.C. 2919.22(B)(2).

{¶112} R.C. 2907.05(B) states:

No person shall knowingly touch the genitalia of another, when touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of the person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

{¶113} R.C. 2919.22(B) states:

No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

\*\*\*

(2) Torture or cruelly abuse the child;

**{¶114}** At trial, the State produced evidence that Appellant, CS's mother, held down the legs of CS, who was under eighteen years of age, while Newman put peanut butter on CS's genitalia. Testimony showed while Appellant was holding down CS, both the dog and Newman licked the peanut butter off CS's genitalia. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant was not convicted against the manifest weight of the evidence.

**{¶115}** Appellant's Ninth Assignment of Error is overruled.

**{¶116}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Baldwin, P. J., and

Hoffman, J., concur.

JWW/br 0222