[Cite as *In re R.R.*, 2023-Ohio-4693.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:

    R.R.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 2023 CA 00025

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2021 DEP 00114 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 21, 2023 |

APPEARANCES:

For Appellant-Mother

JAMES L. BLUNT, II
3954 Industrial Parkway Drive
Shelby, Ohio  44875

For Appellee

SARAH E. EXTEN
RICHLAND CTY. CHILDREN SERVICES
731 Scholl Road
Mansfield, Ohio 44907

*Wise, J.*

{¶1}    Appellee, A.W., appeals the decision of the Richland County Court of Common Pleas, Juvenile Division ("trial court"), which granted permanent custody of R.R. to Richland County Children Services ("the Agency"). The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2}    Appellant is the biological mother of R.R., and J.R. was alleged to be the father of R.R.; however, paternity testing removed J.R. as a possible father to R.R.

{¶3}    Appellant has been diagnosed with Autism Spectrum Disorder, Schizophrenia, Attention Deficit/Hyperactivity Disorder, and has a full-scale IQ of 82. She lives with her biological mother and father. She receives disability benefits, and the payee is Appellant's mother. Appellant's father is a registered sex offender; he has been convicted of Rape, Corruption of a Minor, OVI, Domestic Violence, Aggravated Menacing, Contempt of Court, and multiple instances of Failure to Verify Address. One of his juvenile victims bore him a child. He is the biological father of at least nine other children.

{¶4}    R.R. was born on September 26, 2020. The Agency became informally involved shortly after R.R.'s birth. Five days after R.R. was born, Appellant disclosed at a local hospital that she had homicidal thoughts regarding her then-boyfriend and alleged father of R.R., J.R. She was admitted into the hospital's behavioral unit. Appellant told staff that J.R. was pressuring her for sex and had pulled the baby's legs apart like he does Appellant's.

{¶5} The Agency was notified, and entered into a voluntary safety plan for R.R. The plan called for Appellant to continue to reside with her parents and not engage in unsupervised care of the child.

{¶6} On June 14, 2021, Appellant violated this plan by taking R.R. to Columbus to live with her new then-boyfriend, D.W. Appellant denied R.R.'s maternal grandparents and the Agency access to R.R.

{¶7} On June 15, 2021, an Emergency Shelter Care proceeding was held. This resulted in the immediate placement of the child in the shelter care of the Agency.

{¶8} On June 16, 2021, the Agency filed its Complaint alleging R.R. to be a dependent child.

{¶9} On September 13, 2021, the Magistrate found R.R. to be a dependent child by clear and convincing evidence. D.W. and Appellant agreed to a finding of dependency because of their aggressive behavior toward the baby, cognitive delays, mental health concerns, and lack of parenting skills.

{¶10} On October 8, 2021, the trial court approved the proposed case plan which provided for Appellant to: actively participate in and complete parenting education, follow all service provider recommendations including that of the psychological evaluation, allow access to Appellant's home, sign releases of information, continue with prescribed medications, and engage in weekly, supervised visitations with R.R.

{¶11} While Appellant did complete the psychological evaluation and has taken her prescribed medications, she has not sought any counseling services recommended by psychological evaluation, canceled her parent educator classes, has not verified the

poor conditions of her home have improved as case worker visits occur on the front porch, and Appellant tires about three-quarters of her way through visitation with R.R.

{¶12} Appellant also concedes that she is unable to care for R.R. on her own. She seeks help from her mother, father and adult sister, who all live together. None are employed and exist on disability and survivor benefits. R.R. spent much time in a bouncer seat which accounted for the flatness on one side of R.R.'s head.

{¶13} R.R. has thrived in foster care. R.R. successfully completed physical therapy, speech therapy and counseling for feeding issues. R.R. can count to fifty, is chatty and can sing. She is bonded with the family including their two sons and is protected, loved, and wanted in the foster home. The foster parents are willing to adopt her. Both the caseworker and Guardian ad Litem recommend permanent custody be granted to the Agency.

### ASSIGNMENTS OF ERROR

{¶14} Appellant timely filed her notice of appeal and raises the following two Assignments of Error:

{¶15} "I. WHETHER THE TRIAL COURT ERRED BY FINDING THAT THE CHILD SHOULD HAVE BEEN REMOVED FROM THE PARENT OR NOT PLACED IN THE LEGAL CUSTODY OF THE MATERNAL GRANDPARENTS, RELATIVE PLACEMENT.

{¶16} "II. WHETHER THE TRIAL COURT ERRED BY FINDING THAT APPELLANT FAILED TO SIGNIFICANT PROGRESS [sic] ON THE CASE PLAN TO AMELIORATE THE ISSUES WHICH CAUSED THE CHILDREN [sic] TO BE REMOVED."

**I.**

{¶17} In Appellant's first Assignment of Error, Appellant alleges the child should not have been removed from the parent or should have been placed in the legal custody of the maternal grandparents. We disagree.

{¶18} Appellant has the burden of demonstrating an error on appeal. *See,* App.R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate [her] assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Untied*, 5th Dist. Muskingum No. CT2006-0005, 2007-Ohio-1804, ¶141, quoting *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619 (Feb. 9, 1999). *See, also*, App.R. 16(A)(7).

{¶19} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *State v. Romy*, 5th Dist. Stark No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, ¶35, citing *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, ¶14. Therefore, we may disregard assignments of error Appellant presented for review since he failed to identify in the record the error on which the assignment of error is based and any supporting legal authority. App.R. 12(A)(2).

{¶20} Appellant's brief has failed to identify any argument as to how the trial court erred in removing the child from Appellant's care; the brief only makes a brief statement that because maternal grandparents were part of a safety plan, then they could have been given legal custody. Appellant's "argument" fails to cite statutes, case law, rules of evidence, rules of civil procedure, or learned treatises, and apply the facts of the case to the legal authority. Consequently, we find that Appellant has not presented an argument, but relies only upon the assertion of error, and we thus disregard this assignment of error.

**{¶21}** Appellant's first Assignment of Error is overruled.

## II.

**{¶22}** In Appellant's second Assignment of Error, Appellant argues whether the trial court erred by finding that Appellant failed to make significant progress on the case plan to ameliorate the issues causing the child to be removed. We disagree.

**{¶23}** Initially, Appellant listed an assignment of error that the Agency failed to engage in reasonable efforts to reunite the child with Appellant. However, the body of the argument seems to allege the trial court erred in finding that Appellant failed to make significant progress on the case plan. As such we will address on the error briefed in the body of the argument.

**{¶24}** Our standard of review is to determine if the trial court improperly terminated Appellant's parental rights for abuse of discretion. We would examine the entire record and determine whether there is sufficient competent and credible evidence to support the judgment rendered by the trial court. *Seasons Coal Company v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1978). *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court must resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We would defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot.

**{¶25}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody

and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent of the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the laws allow." *Id.*

**{¶26}** An award of permanent custody must be based upon clear and convincing evidence. R.C. §2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶27}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶28}** Following the hearing, R.C. §2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a)     The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     the child is abandoned;

(c)     the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)     the child has been in the temporary custody of one or more public children services or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶29}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. The statutory best interest test is set out in R.C. §2151.414(D)(1):

> In determining the best interest of the child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-

month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)     Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶30}** Upon review, we find that in determining the best interest of the child, the juvenile court's decision demonstrates that it considered all relevant factors pursuant to R.C. §2151.414(D)(1). There were significant relevant factors that supported the trial court's award of permanent custody to the Agency.

**{¶31}** Appellant did complete the psychological evaluation and has taken her prescribed medications. However, she has not sought any counseling services recommended by psychological evaluation, she canceled her parent educator classes, and has not verified the poor conditions of her home have improved.  In addition, R.R. has bonded with the foster family who has an appropriate home for R.R. Appellant is still residing with her father who is a registered sex offender. Accordingly, the trial court did not abuse its discretion in failing to find Appellant made significant progress in ameliorating the issues which caused the child to be removed.

**{¶32}** Appellant's second Assignment of Error is overruled.

**{¶33}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division of Richland County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

King, J., concur.

JWW/br 1215