[Cite as *State v. Bellamy*, 2024-Ohio-2076.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ERIC BELLAMY, | : | Case No. 23 CAA 06 0037 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:           Appeal from the Delaware County
                                   Court of Common Pleas, Case No.
                                   19 CRI 010063


JUDGMENT:                          Affirmed


DATE OF JUDGMENT:                  May 30, 2024


APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

MELISSA A. SCHIFFEL                        APRIL F. CAMPBELL
Prosecuting Attorney                       Campbell Law, LLC
Delaware County Prosecutor's Office        545 Metro Place South, Suite 100
                                           Dublin, Ohio 43017
By: KATHERYN L. MUNGER
Assistant Prosecuting Attorney
145 North Union Street, 3rd Floor
Delaware, Ohio 43015

*Baldwin, J.*

**{¶1}** The appellant, Eric Bellamy, appeals his conviction and sentence by the Delaware County Court of Common Pleas. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On January 31, 2019, the Delaware County Grand Jury indicted the appellant with six counts of Rape in violation of R.C. §2907.02, three counts of Gross Sexual Imposition in violation of R.C. §2907.05, and one count of Menacing by Stalking in violation of R.C. §2903.211.

**{¶3}** On July 23, 2019, the matter proceeded to trial. At trial, Dr. Bassman testified even though his report was not disclosed within the time limits established by Crim.R. 16(K). This Court sustained the error, vacated the appellant's conviction, and remanded the case back to the trial court. *State v. Bellamy*, 5th Dist. Delaware No. 19 CAA 08 0048, 2021-Ohio-40, *rev'd in part*, 169 Ohio St.3d 366, 2022-Ohio-3698, 204 N.E.3d 542.

**{¶4}** On May 10, 2023, the Appellant filed Motions in Limine to exclude Dr. Bassman's testimony, the forensic interviewer's testimony, and the video evidence of the forensic interview of the alleged victim. The appellee opposed these motions.

**{¶5}** On May 16, 2023, the matter proceeded to trial. In a preliminary matter, the trial court denied the appellant's Motions in Limine, but will consider further objections to specific testimony.

**{¶6}** At trial, L.K. testified that her oldest daughter, N.S., was born on May 27, 2002. In 2008, while living in Morrow County, L.K. met and started dating the appellant.

Shortly after they started dating, the appellant moved in with L.K. and her children. At the time, he was working for his father, but stopped working shortly after moving in with L.K. L.K. and the appellant were married in October of 2008.

{¶7} L.K. was working two jobs and frequently away from the home for long stretches of time. She was saving up money, and eventually bought a house in Delaware County, Ohio, in April of 2009. While working her second job, she met her current husband.

{¶8} While L.K. was at work, N.S. would sometimes go to the babysitter with her siblings and sometimes stay home. The appellant would spend a significant amount of time playing video games and not working. Her relationship ended with the appellant in December of 2009, and she immediately started dating her current husband.

{¶9} In 2015, L.K. reinitiated contact with the appellant. During their conversation, the appellant asked about L.K.'s daughter N.S.

{¶10} At Thanksgiving in 2018, L.K. asked N.S. to use her phone. When she used Google, she noticed N.S. had done a web search on the appellant. When they returned home that evening, N.S. told L.K. why she was looking up the appellant.

{¶11} The appellant's counsel objected as L.K. began to testify about what N.S. told her. The trial court instructed the jury not to determine if what N.S. said was true but to consider the effect N.S.'s statement had on L.K. L.K. testified that N.S. said she googled the appellant to find out if he was living with other little girls. L.K. testified that N.S. said the appellant became mad at N.S. when she left teeth marks on his penis in case L.K. saw them. L.K. then contacted the police and took N.S. to Nationwide Children's Hospital to interview with a specialist.

{¶12} Next, N.S. testified that when she was living in Morrow County, the appellant started to date her mother, L.K. He eventually moved into the house with her and her mother. N.S. was about six years old at this time. She testified that the appellant or a babysitter would watch her the summer after he moved in with her family. He would play video games often at home. One day when L.K. was not at home, the appellant called N.S. into his bedroom and exposed his penis to her. He instructed her to grab it, but she could not remember if she did. However, while still living in Morrow County, the appellant did make N.S. touch his penis by pulling her hand over.

{¶13} After the family had moved to Delaware County in 2009, the appellant's abuse continued. While on the couch in the living room, the appellant anally raped N.S. In the master bedroom of the house, the appellant vaginally raped N.S. on two separate occasions. On many separate occasions, N.S. put her hand on the appellant's penis. He would touch her vagina and he performed cunnilingus on N.S. The appellant also forced N.S. to perform fellatio on him. One time, when L.K. was home, the appellant called N.S. upstairs and showed her his penis. He commented that she had left teeth marks on it and then he made her kiss his penis. The appellant also supplied N.S. with marijuana when they were alone at the house. He would instruct N.S. not to tell anyone what they were doing.

{¶14} Dr. Bassman testified that he is a psychologist. The trial court certified Dr. Bassman as an expert in child abuse. He has worked with thousands who are victims of sexual abuse. He discussed delayed disclosure and that nearly seventy-five percent of the time, children who are victims of sexual abuse wait before disclosure. It can be weeks, months, years, or even decades. The disclosure is usually to a friend or someone other

than the victim's parents. He discussed the causes of delayed disclosure, negative habits people experience to cope with the abuse, and grooming behaviors.

{¶15} Next, Sergeant Kridler from the Delaware County Sheriff's Office testified that he was employed as a Detective assigned to this case. He advised L.K. not to interview N.S. any further about the abuse herself, but to schedule a CAC interview.

{¶16} Before the next witness testified, the appellant's trial counsel renewed his objection to playing the recording of the CAC interview. The appellee edited the interview to show only those parts that discussed medical diagnoses and treatment; however, it was the appellant's position that if they allowed the portion for medical diagnoses and treatment, the entirety should be played. The trial court denied the appellant's objection but consented to the appellant's request that the entire video, except six seconds mentioning the appellant's criminal record, be played.

{¶17} Kerri Wilkinson then testified that she is a forensic interviewer at Nationwide Children's Hospital. She testified that she intakes information for the purposes of medical diagnosis and treatment. The appellee then played the recording of the interview for the jury. Ms. Wilkinson testified that the recording was a fair and accurate representation of that interview.

{¶18} Next, Dr. Michelle Greene testified that she is a doctor at Nationwide Children's Hospital who works in pediatric emergency medicine and as a child abuse pediatrician. The trial court then certified Dr. Greene as an expert in the area of child abuse pediatrics. She discussed the mechanics of the forensic interview, the types of information collected, and for what purpose that information is collected. She also testified that she did an examination of the victim and that the results of the exam were normal.

However, that is common in cases of child sexual abuse, especially when the abuse is over ten years old.

**{¶19}** The State then rested its case.

**{¶20}** The appellant made a Rule 29 motion to dismiss the charge of Rape by digital penetration. The appellee argued that if the trial court was inclined to dismiss the charge, it should be reduced to the lesser included offense of Gross Sexual Imposition. The trial court found the evidence presented could not sustain the charge of Rape but granted the State's request to reduce the charge to Gross Sexual Imposition.

**{¶21}** The jury found the appellant guilty on five counts of Rape in violation of R.C. §2907.02, four counts of Gross Sexual Imposition in violation of R.C. §2907.05, and one count of Menacing by Stalking in violation of R.C. §2903.211 with further findings as to the age of the victim and threat of force.

**{¶22}** On May 23, 2023, the trial court sentenced the appellant to twenty-eight years to life in prison as a Tier III sex offender.

**{¶23}** The appellant timely filed a notice of appeal and raised to following six Assignments of Error:

**{¶24}** "I. THE TRIAL COURT ERRED IN ADMITTED N.S.'S CAC INTERVIEW OVER BELLAMY'S OBJECTION: HER STATEMENTS DID NOT FALL UNDER THE MEDICAL DIAGNOSIS EXCEPTION, EVID.R. 803(4). AND BECAUSE THAT ERROR WAS NOT HARMLESS, BELLAMY'S CONVICTIONS SHOULD BE REVERSED."

**{¶25}** "II. THE TRIAL COURT ERRED IN ADMITTING HEARSAY DAMAGING TO BELLAMY. IT ALSO ERRED IN ADMITTING DR. BASSMAN'S TESTIMONY WHEN

IT WAS NOT COMPETENT, INFLAMMATORY, AND IN VIOLATION OF CRIM.R. 16(K), EVID.R. 403, AND EVID.R. 702.”

**{¶26}** “III. THE EVIDENCE AGAINST BELLAMY WAS LEGALLY INSUFFICIENT AS TO COUNT SEVEN: VENUE WAS NOT ESTABLISHED FOR GROSS SEXUAL IMPOSITION. BELLAMY WAS INDICTED ONLY FOR EVENTS THAT HAPPENED IN DELAWARE. SINCE THE TESTIMONY AND THE PROSECUTION’S ARGUMENT REVEAL THAT COUNT SEVEN OCCURRED IN MORROW COUNTY, R.C. 2901.12(H) DOES NOT APPLY.”

**{¶27}** “IV. BELLAMY’S CONVICTIONS SHOULD BE REVERSED BECAUSE HIS COUNSEL WAS PREJUDICIALLY INEFFECTIVE.”

**{¶28}** “V. THE MANIFEST WEIGHT OF THE EVIDENCE WEIGHS IN FAVOR OF NOT CONVICTING BELLAMY.”

**{¶29}** “VI. BELLAMY WAS DENIED HIS RIGHT TO A FAIR TRIAL IN THIS CASE BECAUSE OF CUMULATIVE ERROR.”

**{¶30}** For the purpose of judicial economy, we will address the appellant’s assignments of error out of order.

## I.

**{¶31}** The appellant argues the trial court erred in admitting the video of the victim’s CAC interview. We disagree.

### STANDARD OF REVIEW

**{¶32}** “Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence.” *Rigby v. Lake County*, 58 Ohio St.3d 269,

271, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

### ANALYSIS

**{¶33}** Evid.R. 803, in pertinent part states:

**(4) Statements for the Purposes of Medical Diagnosis or Treatment.** Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

**{¶34}** To determine "whether statements made to a forensic interviewer at a child advocacy center are made for the purpose of medical diagnosis and treatment, as opposed to forensic investigative purposes, the court must 'identify the primary purpose of the statements.' " *State v. Remy*, 2d Dist. Clark No. 2017-CA-6, 2018-Ohio-2856, ¶82, quoting *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶28. "Whether the purpose of a child's statements is for medical diagnosis or treatment will depend on the facts of the particular case." *State v. Jones*, 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, 43 N.E.3d 833, ¶73.

**{¶35}** In the case *sub judice*, the appellant argues that the examiner did not play a role in the diagnosis or treatment but to gather information. The appellant neglects Ms. Wilkinson's testimony that her role is to gather information for the purposes of medical

diagnosis and treatment. She states that the medical provider always speaks with her before performing the check-up to aid their examination. The information gathered by Ms. Wilkinson is necessary for the medical provider to know what has happened to the child's body, what testing needs to be done, and the medical history of the child. Furthermore, the appellant pointed out in Dr. Greene's testimony that evidence of sexual abuse is unlikely to be found after a ten-year delay. Therefore, the statements providing the medical history, trauma, and mental health of the patient are all appropriate for medical diagnosis or treatment.

{¶36} Also, the appellee edited the video only to show the portion that involves the medical diagnosis or treatment of the victim. However, the appellant's trial counsel asked that the entire video be played if the trial court lets in the Evid.R. 803(4) evidence. Under the invited error doctrine, "a party is not permitted to take advantage of an error that he himself invited or induced the court to make." *Davis v. Wolfe*, 92 Ohio St.3d 549, 552, 751 N.E.2d 1051 (2001). "The invited error doctrine precludes a defendant from making an affirmative and apparent strategic decision at trial and then complaining on appeal that the result of that decision constitutes reversible error." *State v. Hill*, 5th Dist. Stark No. 2023 CA 00069, 2024-Ohio-1717, ¶74, citing *State v. Wilson*, 5th Dist. Muskingum No. CT 2019-0039, 2020-Ohio-1217, ¶20; *See also State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). Therefore, to the extent any evidence from the video that came in that was not for medical diagnosis or treatment because of the appellant's request that the whole video be played and not just those portions related to medical

diagnosis or treatment, the appellant invited such error and is precluded from arguing that it constitutes reversible error now.

**{¶37}** Moreover, Crim.R. 52(A) defines harmless error as "[a]ny defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "[T]he government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508.

**{¶38}** In this case, the victim testified to the abuse inflicted by the appellant that was discussed in the CAC interview. "Where other admissible evidence mirrors improper hearsay, the error in allowing the hearsay is generally deemed harmless, since it would not have changed the outcome of the trial." *State v. Williams*, 1st Dist. Hamilton, 2017-Ohio-8898, 101 N.E.3d 547, ¶17, citing *State v. Richcreek*, 6th Dist. Wood No. WD-09-072, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶43 , citing *State v. Byrd*, 8th Dist. Cuyahoga No. 82145, 2003-Ohio-3958, ¶39; *State v. Paskins*, 5th Dist. Fairfield No. 2021 CA 00032, 2022-Ohio-3810, 199 N.E.3d 680, ¶44. Therefore, assuming, *arguendo*, that hearsay evidence was admitted in error, such error was harmless beyond a reasonable doubt.

**{¶39}** Accordingly, the appellant's first Assignment of Error is overruled.

**III.**

**{¶40}** In the appellant's third Assignment of Error, the appellant argues the evidence against the appellant was legally insufficient as to Count Seven as venue was not established. We disagree.

**STANDARD OF REVIEW**

**{¶41}** Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." RC. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

*Id.* at ¶57.

**{¶42}** Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**ANALYSIS**

**{¶43}** The appellant specifically argues that the conduct that led to Count Seven in the indictment took place in Morrow County and was not pleaded in the indictment.

**{¶44}** "[U]nindicted offenses cannot serve as a basis for venue under the statute." *State v. Williams*, 9th Dist. Lorain No. 14CA010641, 2015-Ohio-3932, 42 N.E.3d 347, ¶13.

**{¶45}** R.C. §2901.12(H) states,

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1)      The offenses involved the same victim, or victims of the same type or from the same group.

(2)      The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3)      The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4)      The offenses were committed in furtherance of the same conspiracy.

(5)      The offenses involved the same or a similar modus operandi.

(6)      The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

**{¶46}** The indictment for Count Seven reads:

THE JURORS OF THE GRAND JURY of the State of Ohio, within and for the body of the County of Delaware, on their oaths, in the name and by the authority of the State of Ohio, do find and present that during the period of February 1, 2008 through April 15, 2010 in Delaware County, Ohio, or by some manner enumerated in Section 2901.12 of the Ohio Revised Code whereby proper venue is placed in Delaware County, Ohio, ERIC J. BELLAMY, did have sexual contact with another, not the spouse of ERIC J. BELLAMY; cause another, not the spouse of ERIC J. BELLAMY to have sexual contact with ERIC J. BELLAMY; or cause two or more other persons to have sexual contact when Jane Doe one of the other persons, is less than thirteen years of age, whether or not ERIC J. BELLAMY knows the age of that person, this being Gross Sexual Imposition in violation of Section 2907.05(A)(4) of the Ohio Revised Code, a Third Degree Felony and against the peace and dignity of the State of Ohio.

**{¶47}** In the case *sub judice*, N.S. testified that the appellant caused her to touch his penis while they resided in Morrow County, Ohio before moving to Delaware County, Ohio. The indictment included multiple counts of Rape and Gross Sexual Imposition against the appellant occurring in Delaware County, where N.S. was the victim. As R.C. ¶2901.12(H)(1) grants venue for offenses involving the same victim and the indictment specifically mentions conduct giving Delaware County, Ohio, proper venue by R.C. ¶2901.12, we find the indictment does charge the appellant with this offense.

**{¶48}** The appellant also argues that the prosecution never established that Count Seven happened in the State of Ohio, only that it happened in Cardington in Morrow

County. However, the Ninth District Court of Appeals found that if, based on facts and circumstances of the testimony, the jury could draw no other reasonable inference as to where the offense occurred, that venue does not need to be proven in express terms. *State v. Simmons*, 9th Dist. Summit No. 22221, 2005-Ohio-1469, ¶21. While it "would have been better practice for the State to have established that [the offenses] occurred in Ohio in express terms," it clearly appears from the evidence presented that the events in question occurred in Morrow County, Ohio. *Simmons* at ¶20.

**{¶49}** Accordingly, we find that the evidence of venue was sufficient to sustain the appellant's conviction on Count Seven. The appellant's third Assignment of Error is overruled.

### II.

**{¶50}** In the appellant's second Assignment of Error, the appellant argues that the trial court erred in admitting hearsay testimony from L.K., N.S., and Detective Kridler, L.K.'s testimony violated the best evidence rule, Dr. Bassman's expert testimony, and testimony regarding conduct occurring in Morrow County. We disagree.

### STANDARD OF REVIEW

**{¶51}** Again, "a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled

arbitrarily, unreasonably, or unconsciably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

## ANALYSIS

### Evidence of Conduct Occurring in Morrow County

**{¶52}** The appellant argues that testimony about the appellant's "unindicted conduct," which occurred in Morrow County, was admitted in error. However, as discussed above in the appellant's third assignment of error, this conduct was indicted, and venue was appropriate in Delaware County. Accordingly, the trial court did not err in admitting testimony regarding Count Seven of the indictment.

### L.K.'s Testimony

**{¶53}** Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."

**{¶54}** Upon review, we find no error in the trial court's decision to admit L.K.'s testimony. L.K. testified that she saw N.S.'s search history, that upon seeing this search history, N.S. disclosed that the appellant abused her, and because of that disclosure, L.K. contacted the police and initiated CAC interview. She testified as to how this information impacted her conduct, not for the truth of the matter asserted. More importantly, the trial court instructed the jury that these statements were offered to show why L.K. called the police and initiated the CAC interview. "[A jury is] presumed to obey the court's instruction." *State v. Tillman* (1997), 119 Ohio App.3d 449, 461, 695 N.E.2d 792. Accordingly, the trial court did not err in admitting L.K.'s testimony and providing an appropriate jury instruction.

**Best Evidence Rule**

**{¶55}** The appellant also summarily argues that L.K.'s testimony regarding discovering the search history on N.S.'s phone violates the best evidence rule.

**{¶56}** Appellants have the burden of demonstrating an error on appeal. *See*, App.R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Untied*, 5th Dist. Muskingum No. CT2006-0005, 2007-Ohio-1804, ¶141, quoting *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619 (Feb. 9, 1999). *See, also,* App.R. 16(A)(7).

**{¶57}** Admissibility of evidence may be challenged on several bases, but we are not at liberty to make the appellant's argument for him. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *State v. Romy*, 5th Dist. Stark No. 00066, 2021-Ohio-501, 168 N.E.3d 86, ¶35, citing *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, ¶14. Therefore, we may disregard arguments the appellant presented for review since he failed to brief the issue. The appellant makes a once sentence claim that L.K.'s testimony regarding N.S.'s search history violated the best evidence rule without stating the best evidence rule, explaining the rule, and applying the rule to the facts of this case. Consequently, we find that the appellant has not presented an argument, but relies only upon the assertion of error, and we thus disregard this argument.

**Sergeant Kridler's Testimony**

**{¶58}** Upon review, we find no error in the trial court's handling of Sergeant Kridler's testimony. Sergeant Kridler started to testify about an incident N.S. disclosed to

him, but the appellant's trial attorney objected before he could. The trial court instructed the appellee to ask a different question. The objection was sustained; the evidence regarding an incident between N.S. and the appellant was not testified to by Sergeant Kridler. Accordingly, the trial court did not err in its handling of Sergeant Kridler's testimony.

### N.S.'s Testimony

**{¶59}** Again, Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."

**{¶60}** We note the appellant did not object to this testimony at trial. We therefore review only for plain error. *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), the Ohio Supreme Court held:

> Under Crim.R. 52(B), the defendant bears the burden of demonstrating that a plain error affected his substantial rights. But even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶14.

**{¶61}** The appellant argues the trial court should not have admitted the following testimony from N.S.:

Q: Okay. Tell me what happened that day.

A: We were at my grandma's house for Thanksgiving and my mom asked me to use my phone to look up something, I don't remember what it was to be exact. I don't know. And she had saw Eric Bellamy's name in my search history on my phone.

Q: Okay.

A: --and had asked me about that and I told her, I told her I'd tell her when we got home.

Q: Okay. Do you remember what you said to her?

A: Like when I told her I'd tell her when we got home?

Q: Either one or when you got home.

A: Well, at my grandma's house, my exact words were, you're going to shit your pants; I'll tell you when we get home, that's what I told her.

Tr. 388-389.

{¶62} Upon review, we find no error in the trial court's decision to admit N.S.'s testimony. N.S. testified not to show the truth of what L.K. said to her, but for its effect on N.S.'s conduct. Furthermore, L.K. testified to the same interaction during her testimony. Accordingly, the trial court did not err in allowing N.S.'s testimony.

### Dr. Bassman Testimony

{¶63} The appellant argues that the trial court erred in admitting Dr. Bassman's testimony as an expert witness and that his report did not comply under Crim.R. 16K. We disagree.

**{¶64}** This Court reviews the admission of expert testimony for an abuse of discretion. *State v. Howard*, 1st Dist. Hamilton Nos. C-190451 and C-190452, 2020-Ohio-5072, ¶23.

**{¶65}** Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶66} The appellant argues that Dr. Bassman vouched for N.S.'s credibility. However, it is clear from the testimony that Dr. Bassman did not; he bolstered the witness's testimony. The Ohio Supreme Court held that an expert may testify that the behavior of an alleged child sexual abuse victim is consistent with behavior observed in other sexually abused children. *State v. Stowers*, 81 Ohio St.3d 260, 261, 690 N.E.2d 881 (1998). An expert may not offer an opinion as to the truth of the victim's statements, but the expert is permitted to provide additional support for the truth of the facts testified to by the victim or provide testimony to assist the fact finder in assessing the child's veracity. *Id.* at 262-263.

{¶67} In *State v. Svoboda*, 1st Dist. Hamilton No. C-190752, 2021-Ohio-4197, 180 N.E.3d 1277, the State called an expert witness to testify about why certain behaviors, such as recantation and delayed disclosure occur in child sexual abuse cases. The First District Court of Appeals held that this type of testimony was not vouching for the child's credibility but was assisting the fact finder in assessing the child's veracity. *Id.* at ¶93.

{¶68} Dr. Bassman's testimony also assisted the fact finder in assessing the child's veracity. He did not testify to the veracity of any of N.S.'s statements. He made clear that he had not examined or met with anyone involved in the alleged conduct giving rise to this case. He provided testimony to explain why delayed disclosure by child sexual abuse victims and the minimization or dissociation from the trauma of the victims, and explained grooming behavior and how and why it occurs in child sexual abuse cases.

{¶69} The appellant also claims that Dr. Bassman's report does not coply with Crim.R. 16(K).

{¶70} Crim.R. 16(K) states:

An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

**{¶71}** This Court has previous noted:

The underlying purpose of Crim.R. 16(K) is stated in the Staff Notes as follows: "Failure to comply with the rule precludes the expert witness from testifying during trial. This prevents either party from avoiding pretrial disclosure of the substance of expert witness's testimony by not requesting a written report from the expert, or not seeking introduction of the report." Crim.R. 16(K) is thus designed to avoid "trial-by-ambush" scenarios. *See State v.* Walls, 2018-Ohio-329, 104 N.E.3d 280, ¶39 (6th Dist.) [error to allow doctor's expert testimony when testimony exceeded the scope of report]. When the prosecution timely provides Crim.R. 16(K) report to the defense, undue surprise is eliminated and the defense may challenge the expert's findings, conclusions, or qualifications, and/or obtain their own expert. See, *State v. Hall,* 1st Dist. Hamilton No. C-170699, 2019-Ohio-2985, ¶11, appeal not allowed, 157 Ohio St.3d 1485, 2019-Ohio-4600, 134 N.E.3d 204.

*State v. Blue,* 5th Dist. Tuscarawas No. 2020AP080015, 2021-Ohio-1703, ¶52.

**{¶72}** In *State v. Blue*, the expert witness also submitted a report in the form of a letter. This report succinctly summarized the expert's "findings, analysis, conclusions, or opinions" regarding her knowledge of nondisclosure and denial by victims of childhood sexual abuse. *Id.* at ¶54.

**{¶73}** In the case *sub judice*, the appellant also argues the letter submitted by Dr. Bassman is not a report within the meaning of Crim.R. 16(K). We disagree. As in *Blue*, Dr. Bassman's report succinctly summarizes his "findings, analysis, conclusions, or opinions" regarding his knowledge of delayed disclosure, dissociation, minimization, and grooming. See Crim.R. 16(K). The report lists Dr. Bassman's qualifications. The report specifically says that Dr. Bassman has not met the victim or the accused. His testimony is not to ascertain the veracity of information related to the case but to provide the finder of fact with information relevant to childhood sexual abuse for delayed disclosure, grooming, and behaviors associated with childhood sexual abuse. Accordingly, we find that Dr. Bassman's letter meets the criteria for an expert report set forth in Crim.R. 16(K).

**{¶74}** Therefore, the appellant's second Assignment of Error is overruled.

**IV.**

**{¶75}** In the appellant's fourth Assignment of Error, the appellant argues he was deprived of effective assistance of counsel as his trial counsel failed to object to L.K.'s testimony on what she saw in N.S.'s search history, L.K.'s testimony on N.S.'s disclosure of the appellant's abuse, to object to testimony regarding Count Seven of the indictment, and Dr. Bassman's testimony. We disagree.

## STANDARD OF REVIEW

**{¶76}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer*, 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 133 S.Ct. 838 (1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶77}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

**{¶78}** To show deficient performance, the appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland* at 688. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial process. *Strickland* at 688.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.*

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064.

*Studer, supra*, at ¶¶58-61. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶79}** Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must show both: 1) that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and 2) that the appellant was prejudiced by such the alleged ineffectiveness.

### ANALYSIS

**{¶80}** "A defense counsel's failure to object is not ineffective assistance of counsel if the evidence is admissible." *State v. Brown*, 3rd Dist. Allen No. 1-19-61, 2020-Ohio-3614, 154 N.E.3d 1129, ¶79, quoting *State v. Jackson*, 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, ¶87.

**{¶81}** As discussed in the appellant's first Assignment of Error, L.K.'s testimony regarding her observing the search history on the cellphone and N.S.'s disclosure that the appellant was worried about the teeth marks N.S. left on his penis were not inadmissible hearsay as they were not offered for the truth of the matter asserted, but for its effect on L.K.'s conduct. These statements caused L.K. to contact the police and set up a CAC interview.

**{¶82}** As discussed in the appellant's third Assignment of Error, Delaware County was an appropriate venue to bring Count Seven Gross Sexual Imposition for acts occurring in Morrow County but with the same victim as those occurring in Delaware County. Accordingly, testimony regarding this conduct is admissible.

{¶83} As discussed in the appellant's second Assignment of Error, Dr. Bassman's testimony was properly admitted as expert testimony under Evid.R. 702. It was succinctly summarized in Dr. Bassman's report as required by Crim.R. 16(K).

{¶84} Accordingly, the appellant has not established that the trial counsel's failure to object has fallen below the objective standards of reasonable representation.

{¶85} Therefore, the appellant's fourth Assignment of Error is overruled.

**V.**

{¶86} In the appellant's fifth Assignment of Error, the appellant argues his conviction is against the manifest weight of the evidence.

**STANDARD OF REVIEW**

{¶87} The manifest weight of the evidence argument addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). The *Thompkins* Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added) Black's, *supra*, at 1594.

*Id.* at 387.

{¶88} The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

{¶89} Furthermore, "in determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.

{¶90} "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

**ANALYSIS**

**{¶91}** The appellant's argument does not argue that any specific conviction was against the manifest weight, but that all of them are because the appellant does not find N.S. credible. We disagree.

**{¶92}** R.C. §2907.02, in pertinent part, states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶93}** R.C. §2907.05, in pertinent part, states:

(A)      No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of the person.

**{¶94}** R.C. §2903.211(A)(1) states:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause

mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member , the other person's belief or mental distress may be based on words or conduct  of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

**{¶95}** In the case *sub judice*, the appellant argues N.S.'s testimony was not believable because of delayed disclosure and noted inconsistencies in the testimony, such as if anyone else was home at the time of the rapes or if the appellant always wore a condom or only sometimes wore a condom while raping her. Appellant also argues that there was no corroborating evidence of the rape. "[C]orroboration of victim testimony in rape cases is not required." *State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, ¶81, *appeal not allowed*, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180.

**{¶96}** N.S. did testify that one two occasions he vaginally raped her, he anally raped her, he performed cunnilingus on her, and she performed fellatio on him, constituting the convictions for rape. She also testified that she was forced to touch his penis, that he would rub her vagina, and that he would touch and kiss her all over her body. N.S. testified with specificity that this happened on numerous occasions. She testified this carried on for months in both Morrow County and Delaware County.

{¶97} The lack of corroboration, the minor inconsistencies, and that she waited ten years to disclose the abuse does not show that the jury clearly lost its way and created such a manifest miscarriage of justice by convicting the appellant.

{¶98} Therefore, the appellant's fifth Assignment of Error is overruled.

**VI.**

{¶99} In the appellant's sixth Assignment of Error, he argues that the cumulative effect of the assigned errors denied him his right to a fair trial. We disagree.

**STANDARD OF REVIEW**

{¶100}        As set forth by this Court in *Brahm v. DHSC, LLC*, 2019-Ohio-766, 132 N.E.3d 266:

> Pursuant to the cumulative error doctrine, which is usually presented
> in criminal cases, a conviction will be reversed where the cumulative effect
> of errors in a trial deprives the defendant of the constitutional right to a fair
> trial even though each individual error by itself does not constitute cause for
> reversal. *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995).

**ANALYSIS**

{¶101}        A cumulative error analysis aggregates only actual errors to determine their cumulative effect. Individual rulings frequently will have an adverse effect on a party, but reversal would not be warranted unless that party can demonstrate that the ruling was an error. Impact alone, not traceable to error, cannot form the basis for reversal. The same principles apply to cumulative error analysis. Therefore, we hold that a cumulative error analysis should evaluate only the effect of matters determined to be errors, not the cumulative effect of non-errors. *State v. Allen*, 5th Dist. Delaware No. 2009-

CA-13, 2010-Ohio-4644, ¶ 257. Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, Stark App. No.2002CA00125, 2003-Ohio-1313 at ¶ 37. As we have not found multiple instances of error, the appellant's sixth assignment of error is overruled.

## CONCLUSION

**{¶102}**        For the forgoing reasons, the judgment of the Court of Common Pleas, Delaware, Ohio, is hereby affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.